Argued February 8, affirmed March 14, 1962

# STATE OF OREGON *v.* WILSON
### 369 P. 2d 739

*Glenn D. Ramirez,* Klamath Falls, argued the cause and submitted the brief for appellant.

*Dale T. Crabtree,* District Attorney for Klamath County, Klamath Falls, argued the cause for respondent. With him on the brief were Sam A. McKeen and John R. Thomas, Klamath Falls.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and LUSK, Justices.

ROSSMAN, J.

This is an appeal by the defendant, Duane F. Wilson, from a judgment of the circuit court which adjudged him guilty of the crime of obtaining money and property by false pretense (ORS 165.205) and sentenced him to a term in the penitentiary. The rendering of the judgment was preceded by the filing of a jury's verdict of guilty.

The defendant was indicted by the Grand Jury of Klamath County February 14, 1961, by an indictment which was filed February 16, 1961. The parts of it that are pertinent to the issues before us, are:

"The said Duane F. Wilson on or about the 28th day of November A.D. 1960 in the said County of Klamath and State of Oregon, then and there being, did then and there wilfully, unlawfully and feloniously, with intent to injure and defraud, falsely pretend to O. E. Thompson, Jr., agent and employee of The Woman's Store, Inc., a corporation, that he, the said Duane F. Wilson, had on deposit with the Klamath Falls Branch of the First National Bank of Oregon, subject to check, the sum of $20.00, and that a certain bank check drawn on said bank for said sum of money, dated November 28, 1960, signed by him and then and there delivered by him to the said O. E. Thompson, Jr., was a good and valid check for said sum of money by means of which said false pretenses and fraudulent check the said Duane F. Wilson did then and there unlawfully and feloniously obtain from the said O. E. Thompson, Jr., merchandise and cash, money of the United States of America, to the amount and value of $20.00, the property of the said corporation, which was then and there induced by said false pretenses to accept said check and to pay therefor the said merchandise and cash, whereas in truth and in fact, the said Duane F. Wilson did not then and there have any money on deposit in said bank, subject to check, and said

check was neither good nor valid but was void and worthless, all of which he, the said Duane F. Wilson, then and there well knew * * *."

The indictment charged a felony, *State v. Cody,* 116 Or 509, 241 P 983.

The following facts are undisputed and since we shall have occasion to mention them from time to time convenience will be served by setting them forth now. Walter E. Conrady is a police officer who investigated the charge that the defendant issued a worthless check in the sum of $20 and thereby obtained cash and merchandise. The indictment does not name the payee of the check. The latter is identified for the record as Exhibit "A." As a witness the defendant admitted that he made and signed the check. He also admitted that he gave it to one O. E. Thompson, Jr., who was the head of the shoe department of a Klamath Falls store that was owned by a corporation entitled The Woman's Store. The store was operated by a corporation entitled Miller Mercantile Co., Inc., and was popularly known as Miller's. The payee of the check was "Miller's." No witness who testified could recall of ever having seen the name "The Woman's Store" upon the building in question. Those who testified upon the subject stated that the name "Miller's" appeared upon the building. When Miller's received the check it deposited it to its credit in its account with the Klamath Falls Branch of the First National Bank. The check was drawn upon that branch of the First National Bank of Oregon. The defendant had never had an account with that bank and the check was returned unpaid to Miller's. The defendant received for the check the pair of slippers and $13.05 cash.

The first assignment of error reads:

"The Court erred in denying defendant's Motion to Quash, in words as follows:

"Comes now defendant above named and respectfully moves the Court for an order quashing the indictment in the above entitled case upon the grounds and for the reasons that said indictment was returned more than sixty days after the defendant was bound over to the grand jury upon said charge, to-wit: From December 5, 1960, until February 14, 1961, and secondly upon the grounds that the District Attorney has represented to this court that he could not prove said charge on February 7, 1961, and then after making said representation, did have the defendant arrested upon the identical charge which has resulted in this indictment."

December 3, 1960, the defendant was arrested upon the charge which is set forth in the foregoing indictment. December 5, 1960, he waived preliminary hearing and indictment. On the same day the district attorney filed an information against him which was entitled "Information of Felony" and charged him with the crime of obtaining money and property by false pretenses as proscribed by ORS 165.205. Its charge was substantially the same as that made by the indictment later returned, with the exception that the information named as the payee of the check "Millers." The indictment did not state the name of the payee of the check. February 9, 1961, was set as the day for trial, but on February 7, 1961, the district attorney moved to dismiss the charge which was recited in the information. The motion was sustained. On the same day the defendant was re-arrested and on February 14, 1961, the indictment was returned by the Grand Jury for Klamath County, the material part of which we have quoted.

By returning to the assignment of error under consideration it will be noticed that it attacks the indictment "upon the grounds and for the reasons that said indictment was returned more than sixty days after the defendant was bound over to the grand jury upon said charge, to wit: From December 5, 1960 until February 14, 1961."

In support of his attack the defendant cites ORS 134.110 which provides:

"When a person has been held to answer for a crime, if an indictment is not found against him within 60 days after the person is held to answer, the court shall order the prosecution to be dismissed, unless good cause to the contrary is shown." ORS 134.140 says:

"(1) If the court directs the charge or action to be dismissed, the defendant, if in custody, shall be discharged. * * *

"(2) An order for the dismissal of a charge or action, as provided in ORS 134.010 to 134.160, is a bar to another prosecution for the same crime if the crime is a misdemeanor; but it is not a bar if the crime charged is a felony."

In the present instance the crime that was charged was a felony, and accordingly, the dismissal of the charge was not a bar. *State v. Jairl*, 229 Or 534, 368 P2d 323. Moreover, the defendant had not moved to dismiss before the indictment was returned, and, accordingly he must be deemed to have waived his right to indictment within the sixty day period: *State v. Sutton*, 223 Or 570, 355 P2d 247.

The assignment of error under consideration, in addition to submitting the contention which we just rejected, offers a second which states: "the District Attorney has represented to this court that he could

not prove said charge on February 7, 1961, and then after making said representation, did have the defendant arrested upon the identical charge which has resulted in this indictment." The reference to "this court" obviously is to the circuit court. The statement that "the District Attorney has represented to this court that he could not prove said charge" was based upon an affidavit, bearing the defendant's signature, which accompanied a motion filed by him praying that the court quash the indictment.

■■ No prosecuting officer should seek to maintain a criminal case if he knows that the defendant is innocent. Rule 5 Canons of Professional Ethics of American Bar Association, and Rule 28 of Oregon Rules of Professional Conduct. In the present case the district attorney had confidence in his ability to establish the defendant's guilt. The moment that his motion to dismiss the information was sustained he had the defendant re-arrested and shortly indicted. At that time there was in the district attorney's possession a confession which the defendant signed December 5, 1960; its admissibility is not questioned on appeal. Apparently, the reason for the motion for a dismissal was the district attorney's dissatisfaction with the manner in which the information identified the victim of the fraud. The indictment made a material change in that respect.

We believe that the first assignment of error lacks merit.

Since the second and third assignments of error can be fairly considered together, we will now do so.

The second assignment of error reads:

"The Court upon examination of witness Walter E. Conrady erred in failing to sustain defendant's

·objection to State's Exhibit A for identification as follows:"

At that point the assignment of error quotes some colloquy between court and counsel. The defendant's objection to the offer of the check, as then voiced, follows:

"We object to State's Exhibit A for identification as being a variance from the Indictment, as ·being insufficiently identified."

Presently defendant's counsel amplified that objection with the following:

"The Indictment charges the defendant with intent to injure and defraud, we assume either ·O. E. Thompson, Jr., or the Woman's Store, Inc., and the State has also proven the separate identity of Miller's, at least by the testimony of Mr. Johansen that they have it either Miller's or Miller's Department Store, or Miller's Mercantile, Inc.,— a separate identity. The check is made out to Miller's, and it is not the crime charged in the Indictment. Based on that, we feel there is a variance between the proof and the Indictment.

"On the second part, as to the sufficiency of identification, we have no showing that this is the check that was given to Mr. Thompson, passed on to Miss Harrison, passed on to David Johansen, passed back to whom * * *."

The third assignment of error states:

"The Court erred in denying defendant's Motion for Judgment of Acquittal."

That assignment of error quotes the following as the motion made by defendant's counsel for acquittal:

"* * * The defendant would respectfully move the Court for a judgment of acquittal of the charge, based upon the grounds that the state

has failed to prove the charge alleged in the Indictment—prove the crime, I suppose, if you would call it a crime,—to Miller's by the check, Miller's Mercantile, Inc., by witness Conrady. For that reason we feel there has been a material variance in the proof and the Indictment—material variance from the proof and the Indictment.

"Also, for the further reason that the Indictment is insufficient in failing to charge from whom the defendant intended to obtain property, who he intended to injure and defraud. Therefore, the Indictment is insufficient and the proof is insufficient, and there is really not much left except a judgment of acquittal under the facts of the case."

The defendant testified that at the time in question, which was November 28, 1960, he saw a pair of women's slippers "in the window at Miller's" and thinking that he would like to purchase them entered the store where he was waited upon by Mr. Thompson, the individual that we have already mentioned. Shortly he made the purchase, the price being $6.95. Going on, the defendant testified:

"* * * I asked Mr. Thompson, 'Would you take a check for it?' He said yes, and he said, 'What bank?' And I said First National. So I wrote out the check, received the goods."

For the check he received not only the slippers but also $13.05 in cash.

Shortly the defendant referred to Exhibit C, a statement which he gave to the aforementioned Conrady. The admissibility of the statement is not questioned upon appeal. It reads, in part, as follows:

"Q: Duane, calling your attention to November 28th, 1960, I have a check here written to Miller's Department Store in the amount of $20.00, drawn on the First National Bank of Oregon, Klamath

Falls Branch, and signed Duane F. Wilson. (Shows Wilson the check) Have you seen this check before?

"A: Yes, I have.

"Q: Is that your signature on the check?
"A: Yes.

"Q: Now Duane, are you the maker of this check?
"A: Yes, I am.

"Q: At the time you wrote this check did you have an account with the bank?
"A: No, I didn't.

"Q: Did you realize that you were doing wrong in writing the check with no account?
"A: Yes, I did."

Upon cross examination of the defendant the district attorney asked him whether he remembered writing and signing the check. We quote from that part of his examination as follows:

"Q You do remember writing it?
"A May I see it, sir?

"Q Sure, go ahead and look at it (handing exhibit to the witness).
"A It looks like my signature. Yes, I remember writing it."

Mr. Thompson testified that after the defendant had found the slippers satisfactory the following conversation occurred:

"* * * Well, then he asked if we would take a check, and I said, 'if it is good,' which that is more or less of an expression of mine when people ask if we will accept a check I say as long as it is good; and he said it was good.

"Q So then what happened?
"A So then he wrote the check out for twenty dollars."

■ In order to support a judgment of conviction in cases of this kind it is unnecessary that the fraudulent party affirmatively state that the check which he tenders is good. In *State v. Hammelsy,* 52 Or 156, 96 P 865, 17 LRA NS 244, Mr. Justice ROBERT BEAN ruled:

> "The giving of such an instrument is therefore as much of a representation that the drawer has money or credit with the bank, as if he had made an oral statement or declaration to that effect. And when the check is given with the fraudulent and felonious purpose of obtaining the property of another, with knowledge of the drawer that he has neither money nor credit at the bank, and that the check will not be paid, it is within the statute, although the drawer made no other representation in reference thereto."

■ From the foregoing it is seen that the defendant himself, from the witness stand, identified the check that was received in evidence (Exhibit A) as the one that he wrote, signed and handed to Mr. Thompson. Clearly, the parts of the assignments of error which charge lack of "sufficiency of identification" are without merit.

We come now to the charge made in the foregoing assignments of error that a variance appears between the indictment and the evidence. There is no claim that the indictment fails to charge a crime, or that any of its averments are made defectively. The sufficiency of the indictment was not tested by a demurrer.

The indictment, as we have seen, charges that the defendant on November 28, 1960, "did then and there wilfully, unlawfully and feloniously, with intent to injure and defraud falsely pretend to O. E. Thompson, Jr., agent and employee of The Woman's Store, Inc., a corporation, that he, the said Duane F. Wilson, had on deposit with the Klamath Falls Branch of the First

National Bank of Oregon, subject to check, the sum of $20.00 and that a certain bank check drawn on said bank for said sum of money, dated November 28, 1960, signed by him and then and there delivered by him to the said O. E. Thompson, Jr., was a good and valid check for said sum of money by means of which said false pretenses and fraudulent check, the said Duane F. Wilson did then and there unlawfully and feloniously obtain from the said O. E. Thompson, Jr., merchandise and cash, money of the United States of America, to the amount and value of $20.00, the property of the said corporation * * *."

■ No variance warrants an acquittal unless it is material and prejudicial to the accused: *State v. Howard,* 214 Or 611, 331 P2d 1116, and *State v. Hibberd,* 123 Or 490, 262 P 950.

The provision of our laws which governs this case, ORS 165.205, says:

"Any person who, by any false pretenses or any privity or false token, and with intent to defraud, obtains or attempts to obtain from any person, any money or property * * * shall be punished upon conviction * * *."

It will be noticed that the statute does not require that the individual who was defrauded must be named in the indictment. We take the following from *State v. Scott,* 48 Mo 422:

"* * * It was not necessary to allege in the indictment that the defendant used the false pretenses or obtained the signature of Conn with the specific intention of cheating or defrauding any particular person or body. The statute has enacted a rule at war with any such assumption. It declares that it shall be sufficient in any indictment for an offense, where an intent to injure, cheat, or defraud shall be necessary to constitute the offense,

to allege that the defendant did the act with such intent, without alleging the intent of the defendant to be to injure, cheat or defraud any particular person; and on the trial of such offense it shall not be necessary to prove an intent on the part of the defendant to injure, cheat or defraud any particular person, but it shall be sufficient to prove that the defendant did the act charged with an intent to injure, cheat and defraud."

*Mack v. State,* 63 Ala 138, ruled:

"To constitute this statutory crime, there must be a pretense, by declaration or otherwise, that some fact or facts exist tending to induce another to part with something valuable, and upon the strength of which pretense or representation the possession of the valuable thing is parted with. The accomplished fraud must have reasonable connection with the pretense (Bish. Stat. Crimes, § 452); and the pretense must be shown to be false, and made with intent to injure or defraud. Defraud whom? The statute does not in terms inform us. Usually the intent is to defraud the owner of the thing obtained; but it is sufficient if the intent be to defraud any one connected with the ownership, possession, or custody of the chattel."

*Commonwealth v. Johnson,* 167 Ky 727, 181 SW 368, after bestowing considerable attention upon the question as to whether the indictment, in cases such as this, must allege that the false representations were made to the owner of the property, concluded:

"It will be observed that our statute is very broad in its terms; it does not require that the false statement or representation must be made to the party defrauded. On the contrary, it says, if any person by any false pretense or statement, with the intention to commit a fraud, obtain money, he is guilty. The statute does not require that the false statement should be made to any particular person, or that it should be with the intention of com-

mitting a fraud upon the person to whom the false statement was made. The offense is committed when the false statement is made, with the intention to commit a fraud, and money or property is thereby obtained."

We quote the following from 22 Am Jur, False Pretenses, 24, page 457:

"It has been held that an intent to defraud need not be directed against the legal owner; it is sufficient if it is directed against anyone in lawful possession of the goods or anyone who parts with property in reliance on the misrepresentation."

Section 25 of the same volume, at page 458, states:

"* * * A false representation to an agent or clerk has been held a false pretense to the principal. * * *"

■ The defendant entered the establishment with which he shortly transacted the little item of business that led to his indictment because he saw in one of its windows a pair of slippers that caught his eye. When he entered the store he spoke to Mr. Thompson. The name of the owner of the store presumably was a matter of no consequence to him. At any rate, no one claims that the defendant was interested in the owner's name. The only matter of consequence to the defendant was the fact that the store had a pair of slippers that he wished to purchase. Upon making inquiry he discovered that the store would accept his check. He then drew it in the amount of $20 and received for it the slippers and $13.05. The indictment alleges that Thompson was the individual to whom the false representation was made and describes him as an employee of The Woman's Store. Thompson testified that he always thought that his employer was The Woman's Store. Mr. Walter Kennett who testified that he was

the manager of the store in question produced a certified copy of the articles of incorporation of The Woman's Store and testified:

"We are incorporated under The Woman's Store, Miller's The Woman's Store. It used to be Moe's The Woman's Store * * *. It is Miller's The Woman's Store, but we are known as Miller's."

Presently he added:

"We call ourselves Miller's, but we are incorporated as The Woman's Store * * * We don't call ourselves The Woman's Store only in our incorporation, that is the only time we ever use The Woman's Store."

The defendant entered as the payee of his check Miller's. The store's bank account was under that name and the check was deposited to the credit of that account. It was returned dishonored.

Every detail of the transaction that occurred is averred in the indictment in exactly the way in which it took place. There is no variance.

The second and third assignments of error are without merit.

The judgment of conviction is affirmed.